United States District Court
Southern District of Texas
**ENTERED**
October 15, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| WELLS FARGO VENDOR FINANCIAL SERVICES, LLC, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:26-cv-00027 |
| | § | |
| LONE STAR LAND WORKS LLC, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

This is a straightforward collection matter. Lone Star Land Works, LLC borrowed money from Wells Fargo Vendor Financial Services, LLC to buy equipment for use in Lone Star's construction business. Lone Star's owner, Brandon Marques, guaranteed the debt. To date, Lone Star has failed to repay the debt, and Marques has failed to honor a request that he satisfy Lone Star's payment obligations. For Lone Star and Marques, their day of reckoning has arrived.

## BACKGROUND

On June 15, 2023, Wells Fargo and Lone Star entered into a Master Loan and Security Agreement and an Equipment Schedule (collectively, "Loan Agreement"). *See* Dkt. 34-1 at 9–13. That same day, Marques signed a Continuing Guaranty in which he promised to fulfill Lone Star's contractual obligations in the event of a default. *See id.* at 17. Both the Loan Agreement and Continuing Guaranty are governed by Iowa law. *See id.* at 11 ("THIS MASTER AGREEMENT AND EACH OTHER DOCUMENT WILL BE GOVERNED BY THE SUBSTANTIVE LAWS OF THE STATE OF IOWA."); *id.* at 17 ("This Guaranty shall be governed by the laws of the State of Iowa.").[1]

[1] Wells Fargo's principal office is in Des Moines, Iowa. *See* Dkt. 7 at 3; Dkt. 7-3 at 4.

As part of the Loan Agreement, Wells Fargo financed Lone Star's purchase of a 2023 Bobcat Model T770 New Compact Track Loaders, S/N AT6338775 (the "Equipment"). *See id.* at 12. The Loan Agreement required Lone Star to repay the principal balance of $96,302.39 during a term of 48 months, with monthly payments of $2,085.09. *See id.* The Loan Agreement also granted Wells Fargo a security interest in the Equipment. *See id.* at 9.

Lone Star failed to make monthly payments due under the Loan Agreement. Although Wells Fargo sent several letters to Lone Star and Marques demanding payment, Lone Star and Marques still did not tender payment. *See id.* at 19, 21–22, and 24–25. Wells Fargo also requested that Lone Star and Marques "surrender and return the Equipment to" Wells Fargo, but that has not occurred. *Id.* at 24.

On December 23, 2025, Wells Fargo filed suit against Lone Star and Marques. *See* Dkt. 7-3. Wells Fargo asserts five causes of action: (1) breach of loan agreement; (2) breach of guaranty; (3) request for declaratory relief and turnover order; (4) injunctive relief; and (5) application for prejudgment writ of sequestration. *See* Dkt. 7-3 at 8–13. The court previously denied Wells Fargo's application for a prejudgment writ of sequestration. *See* Dkt. 33.

Wells Fargo has moved for summary judgment on the first three causes of action, asking this court to award $84,039.76 in damages (plus pre-judgment interest), issue a declaration of its first-priority security interest, and enter an order directing Defendants to turn over the Equipment. *See* Dkt. 34.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact issue is material only "if its resolution could affect the outcome of the action." *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 409 (5th Cir. 2002). A dispute of material fact is genuine if the evidence would allow a reasonable jury to find for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once satisfied, the burden shifts to the nonmovant to show the existence of a genuine fact issue for trial. *See id.* at 324. To do so "the non-movant must identify specific evidence in the summary judgment record demonstrating that there is a material fact issue concerning the essential elements of its case for which it will bear the burden of proof at trial." *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007) (quotation omitted). In ruling on a motion for summary judgment, I must construe "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso County*, 946 F.3d 717, 723 (5th Cir. 2020).

## ANALYSIS

### A. BREACH OF CONTRACT AND BREACH OF GUARANTY CLAIMS

Wells Fargo first seeks summary judgment on its breach of contract claim against Lone Star and its breach of guaranty claim against Marques. To prevail on a breach of contract claim under Iowa law, Wells Fargo

> must prove: (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff suffered damages as a result of the breach.

*Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998). "A guaranty is a contract by one person to another for the fulfillment of a promise of a third person." *City of Davenport v. Shewry Corp.*, 674 N.W.2d 79, 86 (Iowa 2004) (cleaned up). Thus, the elements for a breach of guaranty claim are identical to the elements for a breach of contract claim. *See Maytag Appliances Sales Co. v. Butler*, No. 4:04-cv-40411, 2005 WL 8158014, at *4 (S.D. Iowa 2005) (applying breach of contract elements to a claim for breach of a personal guaranty agreement).

There is no genuine dispute of material fact as to Wells Fargo's breach of contract claim against Lone Star or its breach of guaranty claim against Marques.

With respect to the breach of contract claim against Lone Star, the uncontroverted summary judgment evidence establishes (1) the Loan Agreement is a binding contract; (2) the terms and conditions of the loan transaction; (3) Wells Fargo performed its end of the bargain by loaning Lone Star $96,302.39; (4) Lone Star breached the Loan Agreement by failing to pay the amounts due; and (5) Wells Fargo suffered $84,039.76 in damages as a result of the breach, including $60,374.02 in past due loan payments, $22,935.99 in accelerated loan payments, and $729.75 in late charges. *See* Dkt. 34-1 at 6.

Turning to the guaranty claim against Marques, Wells Fargo has demonstrated that (1) the Continuing Guaranty is a contract; (2) that sets forth the terms and conditions; (3) Wells Fargo has loaned money to Lone Star; (4) Marques failed to pay amounts due by Lone Star even after receipt of a written demand; and (5) Wells Fargo has incurred $84,039.76 in damages as a result.

In an attempt to stave off summary judgment, Defendants advance several arguments. None have merit.

Defendants argue that application of the Iowa Consumer Credit Code ("ICCC") somehow precludes the entry of summary judgment. *See* Dkt. 35 at 3. This argument is easily dismissed. First, Defendants do not explain how the ICCC, if applicable, creates a fact issue on Wells Fargo's breach of contract and guaranty claims. There is no affirmative defense or counterclaim pled by Lone Star or Marques asserting claims under the ICCC. Second, and more importantly, the ICCC is not applicable to the present case. The ICCC regulates certain consumer lending, credit, and debt collection activities in Iowa. Importantly, the ICCC "applies only to debts which arise from consumer credit transactions." *State ex rel. Miller v. Nat'l Farmers Org.*, 278 N.W.2d 905, 906 (Iowa 1979). "The only loan transaction which is a consumer credit transaction is a 'consumer loan.' An essential element of a 'consumer loan' . . . is that the debt is incurred primarily for

'a personal, family or household purpose.'" *Union Story Tr. & Sav. Bank v. Sayer*, 332 N.W.2d 316, 319 (Iowa 1983) (quoting Iowa Code § 537.1301(14)(a)(3) (1983) (current version at Iowa Code Ann. § 537.1301(15)(a)(3) (West 2021)). Here, it is undisputed that the loan financed the acquisition of Equipment that would be used "ONLY IN THE LAWFUL CONDUCT OF [Lone Star's] BUSINESS, AND NOT FOR PERSONAL, HOUSEHOLD OR FAMILY PURPOSES." Dkt. 34-1 at 10. As such, the ICCC is inapplicable.

Defendants next argue that summary judgment would be unfair because "the transaction was rushed," "the terms were not discussed," and Marques "was unaware that Iowa law would apply." Dkt. 35 at 4. This argument is unavailing. "A person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained or that he did not understand it." *In re Cajun Elec. Power Co-op., Inc.*, 791 F.2d 353, 359 (5th Cir. 1986) (quotation omitted); *see also Morgan v. Am. Fam. Mut. Ins. Co.*, 534 N.W.2d 92, 99 (Iowa 1995) ("A party is charged with notice of the terms and conditions in a contract he or she entered into if the party is able to read the contract and has the opportunity to read it."); *Huber v. Hovey*, 501 N.W.2d 53, 55 (Iowa 1993) ("It is well settled that failure to read a contract before signing it will not invalidate the contract.").

I thus recommend that summary judgment be awarded to Wells Fargo on its breach of contract and breach of guaranty claims.

**B. REQUEST FOR DECLARATORY RELIEF AND TURNOVER ORDER**

Wells Fargo also claims that it is entitled to: "(1) a declaration that it holds a valid, first-priority purchase money security interest in the [Equipment]; and (2) an order directing Defendants to turn over the [Equipment] to Plaintiff forthwith." Dkt. 34 at 8.

As for the declaratory relief claim, Defendants do not dispute that Wells Fargo holds a valid, first-priority purchase money security interest in the Equipment. On June 27, 2023, Wells Fargo filed a UCC Financing Statement with

the Texas Secretary of State, perfecting its interest in the Equipment as collateral. *See* Dkt. 34-1 at 15.

In support of its contention that it is entitled to take possession of the Equipment, Wells Fargo points to Section 13 of the Loan Agreement:

> If you default, we may, in our sole discretion . . . require you to return all of the Equipment at your sole cost to a place designated by us; . . . lease or sell the Equipment or any portion thereof, and we may apply the proceeds as may be applicable to us to the extent permitted by applicable law; . . . and [] have the right to bid on and purchase the Equipment at any public or private sale.

Dkt. 34-1 at 10–11.

In opposing Wells Fargo's request for declaratory relief and a turnover order, Defendants present one argument: Wells Fargo's request for monetary damages and a return of the Equipment amounts to an impermissible double recovery. Not so. The law is clear that Wells Fargo, as a secured creditor, is entitled to take possession of the Equipment and apply its value to outstanding debt. *See* Iowa Code Ann. §§ 554.9609, 554.9615(4) (West 2024). Wells Fargo has submitted a proposed final judgment showing that it is not seeking more than one recovery for the same injury. The proposed final judgment provides that Wells Fargo must elect in writing within 14 days after obtaining possession of the Equipment its intent to either: "(a) retain the [Equipment] in full satisfaction of this Judgment; or (b) conduct a non-judicial public or private foreclosure disposition sale of the [Equipment] pursuant to and in accordance with applicable commercial law." Dkt. 38 at 2. If Wells Fargo elects to sell the Equipment, "[t]he net proceeds of the Sale shall reduce the amount of the Judgment on a dollar-for-dollar basis, and [Wells Fargo] shall have the right to pursue the remaining amount of this Judgment, if any, against Defendants." *Id.* This language eliminates any concern that Wells Fargo is seeking double recovery. Accordingly, Wells Fargo is entitled to declaratory relief and a turnover order.[2]

---

[2] Wells Fargo's sole remaining cause of action is for injunctive relief. Wells Fargo asks the court to enjoin Defendants from using or disposing of the Equipment, and to order them

## CONCLUSION

For the reasons discussed above, I recommend that Wells Fargo's motion for summary judgment (Dkt. 34) be granted. Specifically, I recommend that:

- Wells Fargo recover judgment against Lone Star and Marques, jointly and severally, for $84,039.76;
- Wells Fargo be awarded post-judgment interest at the statutory rate;
- The court declare that Wells Fargo holds a valid, first-priority purchase money security interest in the Equipment;
- Lone Star and Marques be ordered to turn over the Equipment to Wells Fargo within 14 days from the entry of final judgment;
- Within 14 days after obtaining physical possession, custody, and control of the Equipment, Wells Fargo shall file in this case a written election of its intent to either: (a) retain the Equipment in full satisfaction of the judgment; or (b) conduct a non-judicial public or private foreclosure disposition sale of the Equipment pursuant to applicable commercial law, including but not limited to UCC 9-610 et seq. (the "Sale"), with the proceeds of the Sale to be applied in the manner set forth in UCC Article 9-615; and
- The net proceeds of the Sale shall reduce the amount of the judgment on a dollar-for-dollar basis, and Wells Fargo shall have the right to pursue the remaining amount of the judgment, if any, against Lone Star and Marques.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 15th day of October 2026.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

to surrender to Equipment to Wells Fargo. *See* Dkt. 7-3 at 11. That request is denied because I recommend the immediate turnover of the Equipment to Wells Fargo.